IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIRDIA SPAIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 CV 1065 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ELGIN MENTAL HEALTH CENTER, | ) | |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| SERVICES d/b/a ELGIN MENTAL HEALTH | ) | |
| CENTER, JEFF PHARIS, and | ) | |
| DWAYNE WARD, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Virdia Spain filed a five-count amended complaint against her former employer Elgin Mental Health Center ("EMHC"), the Illinois Department of Human Services ("IDHS"), and Jeff Pharis and Dwayne Ward in their individual capacities ("the individual defendants"), alleging that defendants discriminated against her based on her race. In Count I, plaintiff alleges that all defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., by taking an adverse employment action against her based on her race. Counts II is a claim under 42 U.S.C. § 1981, alleging that the individual defendants subjected plaintiff to a hostile work environment and that EMHC and IDHS are liable under a respondeat superior theory. Count III alleges that the individual defendants violated 42 U.S.C. § 1983 by subjecting plaintiff to a hostile work environment. Counts IV and V are state law claims against all defendants for violating the Illinois Civil Rights Act of 2003, 740 Ill. Comp. Stat. 23/5 et seq., and common law malicious prosecution, respectively. Defendants have filed a motion to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the following reasons, the court grants defendants' motion to dismiss in its entirety.

# **BACKGROUND**[1]

Plaintiff, an African American woman, was employed as a Security Therapy Aide ("aide") from October 3, 1988, until October 30, 2008, with EMHC, a facility controlled and operated by IDHS. Aides' duties include observing mentally disabled patients and assisting patients while eating. When necessary, aides must follow special precautions to accommodate each patient's needs.

On June 20, 2008, a white aide was assigned to pass trays of food to patients. Part of her assignment included distributing precautionary diet trays for the patients. Before dispensing the tray, the aide was required to double-check that the patient's food was consistent with the patient's dietary card listing his dietary restrictions (among the patient's dietary restrictions were that he was to have a "dental soft" diet, and that he was allergic to fish). The white aide failed to perform this task.

The white aide then handed the patient's tray to a Filipina aide assigned to deliver the patient's dinner and to engage in an hour long "one-to-one" observation of the patient, beginning at 5:00 p.m. She delivered the tray to the patient in the dining room. At 5:30 p.m., the Filipina aide began feeding the patient his meal, which included fish.

Plaintiff was assigned to relieve the Filipina aide and observe the patient "one-to-one" from 6:00 p.m. until 7:00 p.m. At 5:55 p.m., plaintiff approached the Filipina aide and the patient. Plaintiff noticed that the patient had eaten 75 to 80 percent of his meal, and asked the Filipina aide why the patient did not have a dental soft tray. In response, the Filipina aide began

---

[1]The following facts come from the amended complaint, and for purposes of evaluating defendants' motion to dismiss, the court accepts them as true. Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

cutting what remained of the patient's fish to assist his eating.  Plaintiff relieved the Filipina aide at 6:00 p.m., and the patient finished his meal 5 minutes later.  Soon after, the patient went into anaphylactic shock and died.

As a result of the events leading to the patient's death, EMHC conducted a review of plaintiff's conduct.  Dwayne Ward attended the review.  On October 30, 2008, defendants placed plaintiff on "diverted duty," requiring her to work in an area other than her assigned unit and rendering her ineligible to work overtime.  On December 15, 2008, plaintiff began receiving retirement disability benefits.

On November 7, 2008, both plaintiff and the Filipina aide were charged with abuse of a long-term health care facility resident, a Class 3 felony in Illinois.[2]  The charges were dismissed on December 18, 2008.  The white aide was not charged with any crime in connection with the patient's death, nor did defendants place her on diverted duty.

Plaintiff filed a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights against EMHC on November 9, 2009.  The EEOC issued a Notice of Right to Sue on plaintiff's charge on November 20, 2009.

---

[2] The criminal complaint was filed in the Circuit Court for the Sixteenth Judicial Circuit in Kane County, Illinois.  2008 CF 003123.

**DISCUSSION**

I.  **Legal Standard**

Pursuant to Fed. R. Civ. P. 12(b)(1), a court must dismiss any action over which it lacks subject-matter jurisdiction. Further, a complaint that fails to state a claim upon which relief can be granted should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted). To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Its allegations must also plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level." Twombly, 550 U.S. at 555.

II.  **Defendants' Motion to Dismiss**

  A.  **Defendant Elgin Mental Health Center**

Defendant EMHC lacks capacity to be sued. Fed. R. Civ. P. 17(b)(3) (law of state where federal court sits governs capacity to be sued); Williams v. Fairman, No. 94 C 206, 1996 WL 164289, at *1 (N.D. Ill. Apr. 2, 1996) (in Illinois, a defendant must have a legal existence for a court to properly exercise jurisdiction over it); Payne v. Cook County Hosp., 719 F.Supp. 730, 733-34 (N.D. Ill. 1989) (as a department within the IDHS, EMHC lacks an independent legal existence). Accordingly, all counts against EMHC are dismissed with prejudice. Fed. R. Civ. P. 17(b).

4

B.	Title VII Claim (Count I)

Defendants argue that because plaintiff's EEOC charge was not timely filed, her Title VII claim should be dismissed. The court agrees. An EEOC charge must be filed within 300 days after the alleged discriminatory conduct occurred, 42 U.S.C.§ 2000e-5(e)(1); Koelsch v. Beltone Elecs. Corp., 46 F.3d 705 (7th Cir. 1995) (failure to file within the 300-day time limit renders the complaint untimely). Plaintiff's EEOC charge indicated that the last date of alleged unlawful action was December 15, 2008, when plaintiff became eligible for retirement disability benefits after her discharge in October 2008. She did not, however, file her EEOC charge until November 9, 2009—329 days after the last alleged instance of discrimination. Plaintiff's Title VII claim is thus untimely.

Plaintiff argues that her claim is not untimely because defendants' discriminatory acts constitute a "continuing violation," which provides an exception for otherwise untimely claims. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 107 (2002). According to plaintiff, the exception applies because, (1) IDHS's placing her on the IDPH Health Care Registry constituted an ongoing attempt to prevent her from finding new employment as a health care worker, and (2) IDHS intended to discharge her. The continuing violation exception, however, applies only if the acts falling outside the 300-day window are "related closely enough to the acts occurring within" that time frame to be considered one ongoing violation. Filipociv v. K & R Express Sys., Inc., 176 F.3d 390, 396 (7th Cir. 1999). The exception does not apply here, where plaintiff has alleged a discrete act—IDHS's placing her on diverted duty—rather than a series of actions that, taken together, amount to discrimination. See Nat'l R.R. Passenger Corp., 536 U.S. at 112-14. IDHS's alleged subsequent actions are not discrete discriminatory acts; rather, they are

consequences emanating from the discriminatory discharge. Savory v. Lyons, 469 F.3d 667, 673 (7th Cir. 2006), citing Del. State College v. Ricks, 449 U.S. 250, 258 (1980). The court therefore dismisses Count I of plaintiff's amended complaint.

The court will not consider the allegations, which plaintiff advances for the first time in her response to the motion to dismiss, that after filing her amended complaint, plaintiff has faced continuing discrimination and was actually terminated. Plaintiff may not amend her complaint through her brief. See Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993). Nor may plaintiff, as she requests, file a second amended complaint[3] to include allegations not encompassed by her EEOC charge. Cheek v. W. and S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994), citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974). Her EEOC charge stated only that she was discharged on October 30, 2008, began to receive retirement disability benefits on December 15, 2008, and believed her employer discriminated against her based on her race. For the court to consider plaintiff's new claims of ongoing race discrimination and termination as part of that EEOC charge, the complaint and the EEOC charge must be alike or reasonably related, meaning that they, "at a minimum, describe the same conduct and implicate the same individuals." Cheek, 31 F.3d at 501 (emphasis in original). An EEOC charge and a complaint do not meet this standard when, as here, an employee complains to the EEOC of certain episodes of discrimination, then seeks judicial relief for other incidents. Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992). To seek relief on these new instances of alleged discrimination, plaintiff would first need to file a new, and timely, EEOC charge.

---

[3]In plaintiff's response brief, she seeks leave to file a second amended complaint to add: (1) facts regarding ongoing discrimination; (2) a claim for retaliation under Title VII; and (3) a request for injunctive relief against IDHS.

### C. §§ 1981 and 1983 Claims (Counts II and III)

Defendants argue that plaintiff's §§1981 and 1983 claims should be dismissed for three reasons: (1) IDHS is not amenable to suit for §§1981 and 1983 purposes; (2) IDHS has sovereign immunity; and (3) the complaint fails to state a claim against the individual defendants. The court agrees, and dismisses plaintiff's §§ 1981 and 1983 claims against all defendants.

#### 1. IDHS

IDHS is entitled to dismissal both because it is not a "person" amenable to suit under §§1981 and 1983 claims, and because the Eleventh Amendment grants it sovereign immunity. First, a state is not a "person" under 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); Badger Catholic, Inc. v. Walsh, 620 F.3d 775, 781 (7th Cir. 2010). A state agency, as an "arm of the State," is accorded the same treatment. Will, 491 U.S. at 70; Leavell v. Ill. Dep't of Natural Res., 600 F.3d 798, 808 n.6 (7th Cir. 2010). States' protection from § 1983 suits extends to those under 42 U.S.C. § 1981 as well. Hearne v. Bd. of Edu., 185 F.3d 770, 776 (7th Cir. 1999).

Second, the Eleventh Amendment generally immunizes states from private damage actions in federal court. Kroll v. Bd. of Trustees of Univ. of Ill., 934 F.2d 904, 907 (7th Cir. 1991). State agencies are subject to the same treatment as states. Id. The rule applies unless, (1) the state unequivocally waives its Eleventh Amendment protection, thereby consenting to suit in federal court, or (2) Congress unequivocally states its intent to abrogate Eleventh Amendment immunity. Id. With respect to §§ 1981 and 1983, Congress has not conveyed unequivocal intent to abrogate states' Eleventh Amendment immunity. Will, 491 U.S. at 66 (noting that Congress had no intention of abrogating states' Eleventh Amendment immunity by enacting § 1983);

7

Perkins v. Bd. of Trustees of Univ. of Ill., No. 95 C 4320, 1996 WL 308292, at *1 (N.D. Ill. June 4, 1996) (holding that subsection (c) of § 1981 fails to demonstrate congressional intent to waive Eleventh Amendment immunity). The court therefore dismisses plaintiff's §§ 1981 and 1983 claims against IDHS.

### 2. Individual Defendants

Finally, plaintiff has failed to allege sufficient facts to allow the court to plausibly infer that the individual defendants are liable under §§ 1981 and 1983. The amended complaint alleges that the individual defendants were employed by IDHS/EMHC, and that they were acting as employees or agents of those entities. It further alleges that defendant Ward was present during plaintiff's review, that the individual defendants subjected plaintiff to a hostile work environment based on her race, and that their acts of discrimination were willful, reckless, and malicious. To be held liable under either statute, however, the defendant must have participated directly in the constitutional violation alleged. Hildebrandt v. Ill. Dept. of Natural Res., 347 F.3d 1014, 1039 (7th Cir. 2003); Musikiwamba v. ESSI, Inc., 760 F.2d 740, 753 (7th Cir. 1985). The amended complaint thus contains only conclusory allegations of the individual defendants' liability and is entirely devoid of any facts creating a plausible inference that they participated in violating plaintiff's constitutional rights Twombly, 550 U.S. at 555 (explaining that courts are not bound to accept legal conclusions couched as factual allegations).

Moreover, plaintiff's allegations do not rise to the level of a "hostile work environment." In determining whether a "hostile work environment" claim exists, the court "is to look at all circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

8

interferes with an employee's work performance." Morgan, 535 U.S. at 103. Hostile work environments develop over a series of days or perhaps years. Id. Plaintiff, however, has alleged only a single discrete act of discrimination: an adverse employment action based on plaintiff's race.

Plaintiff's §§ 1981 and 1983 claims against the individual defendants are therefore dismissed.[4]

### D.    Plaintiff's State Law Claims

Because all of plaintiff's federal claims are dismissed, the court dismisses plaintiff's state law claims without prejudice for lack of federal jurisdiction. Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999) (noting that "the well-established law of [the Seventh Circuit] that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's amended complaint is granted. All counts against EMHC are dismissed with prejudice. As to IDHS and the individual

---

[4]Defendants incorrectly argue that the individual defendants have Eleventh Amendment immunity, thus entitling them to dismissal from plaintiff's claims. Plaintiff's amended complaint explicitly states that Ward and Pharis are being sued in their individual capacities. Even if an individual's actions can be labeled "state action," the Eleventh Amendment does not afford him immunity so long as he is sued in his individual capacity. Kroll, 934 F.2d at 907 (citation omitted).

9

defendants, Counts I, II, and III are dismissed with prejudice, and Counts IV and V are dismissed without prejudice for lack of federal jurisdiction.[5]

**ENTER:    April 18, 2011**

_____
**Robert W. Gettleman
United States District Judge**

---

[5]The court expresses its appreciation to Timothy R. Couture and Paul Gamboa, both of Johnson & Bell, Ltd. for their excellent representation of plaintiff pursuant to court appointment.